UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re FORD MOTOR COMPANY ERISA LITIGATION | ) ) ) ) ) ) ) ) ) ) | Consolidated Cases<br>Master Case No. 06-cv-11718<br><br>Honorable Stephen J. Murphy, III<br>Magistrate R. Stephen Whalen<br><br>**CLASS ACTION** |

## PLAINTIFFS' MOTION FOR AN ORDER PRELIMINARILY APPROVING STIPULATION AND AGREEMENT OF SETTLEMENT, CERTIFYING THE CLASS, AND SETTING A DATE AND TIME FOR THE FAIRNESS HEARING

Plaintiffs David Cooper and Mark Ousachi ("Named Plaintiffs"), by and through Keller Rohrback L.L.P and Barroway Topaz Kessler Meltzer & Check, L.L.P. ("Lead Counsel"), respectfully move the Court for an Order (1) preliminarily approving the Stipulation and Agreement of Settlement described herein; (2) preliminarily certifying the proposed Class pursuant to the Federal Rules of Civil Procedure 23(b)(1) and/or 23(b)(2); (3) approving the form and method of Class Notice; and (4) setting a date and time for a hearing (the "Fairness Hearing") for consideration of final approval of the Stipulation, of attorneys' fees and costs, and of Case Contribution Awards to the Named Plaintiffs.

DATED this 27th day of August, 2010.          Respectfully submitted,

/s/ Derek W. Loeser
KELLER ROHRBACK L.L.P.
Lynn L. Sarko
Derek W. Loeser
Elizabeth A. Leland
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel: (206) 623-1900
Fax: (206) 623-3384

BARROWAY TOPAZ KESSLER
 MELTZER & CHECK LLP
Joseph H. Meltzer
Edward W. Ciolko
Peter H. LeVan, Jr.
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

*Lead Counsel for the Class*

STEPHEN F. WASINGER, PLC
Stephen F. Wasinger
26862 Woodward Avenue, Suite 100
Royal Oak, MI 48067
Tel: (248) 544-1500
Fax: (248) 544-9400

*Liaison Counsel for the Class*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| )<br>) | |
| In re FORD MOTOR COMPANY )<br>ERISA LITIGATION ) | Consolidated Cases<br>Master Case No. 06-cv-11718 |
| ) | |
| ) | Honorable Stephen J. Murphy, III |
| ) | Magistrate R. Stephen Whalen |
| ) | |
| ) | **CLASS ACTION** |
| ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER PRELIMINARILY APPROVING STIPULATION AND AGREEMENT OF SETTLEMENT, CERTIFYING THE CLASS, AND SETTING A DATE AND TIME FOR THE FAIRNESS HEARING

| | |
|---|---|
| STEPHEN F. WASINGER, PLC<br>Stephen F. Wasinger<br>26862 Woodward Avenue, Suite 100<br>Royal Oak, MI 48067<br>Tel: (248) 544-1500<br>Fax: (248) 544-9400<br><br>*Liaison Counsel for the Class* | |
| BARROWAY TOPAZ KESSLER<br> MELTZER & CHECK LLP<br>Joseph H. Meltzer<br>Edward W. Ciolko<br>Peter H. LeVan, Jr.<br>280 King of Prussia Road<br>Radnor, PA 19087<br>Tel: (610) 667-7706<br>Fax: (610) 667-7056<br><br>*Lead Counsel for the Class* | KELLER ROHRBACK L.L.P.<br>Lynn L. Sarko<br>Derek W. Loeser<br>Elizabeth A. Leland<br>1201 Third Avenue<br>Suite 3200<br>Seattle, WA 98101-3052<br>Tel: (206) 623-1900<br>Fax: (206) 623-3384<br><br>*Lead Counsel for the Class* |

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    PROPOSED SCHEDULE ............................................................................. 2

III.   DISCUSSION ................................................................................................ 2

       A.     Procedural History ........................................................................... 2

       B.     Settlement Negotiations .................................................................... 4

       C.     Terms of the Stipulation.................................................................... 4

IV.    DISCUSSION ................................................................................................ 7

       A.     The Stipulation Meets the Judicial Standards for Preliminary
              Approval Under Rule 23................................................................... 7

       B.     Consideration of Final Approval Criteria Supports Preliminary
              Approval ........................................................................................... 8

              1.     The Likelihood of Plaintiffs' Success on the Merits
                     Weighed Against the Form of the Relief Offered in the
                     Stipulation Favors Approval .................................................. 9

              2.     The Risks, Expenses and Delay of Continued Litigation
                     Favor Approval .................................................................... 11

              3.     The Judgment of Experienced Trial Counsel and the
                     Amount and Character of Discovery Weigh In Favor Of
                     Approval ............................................................................... 13

              4.     Evaluation of Objections by Unnamed Class Members is
                     Premature ............................................................................. 15

              5.     The Stipulation is the Product of Arm's-Length
                     Negotiations ......................................................................... 15

              6.     The Stipulation's Consistency with Public Interest Favors
                     Approval ............................................................................... 16

       C.     Certification of the Class is also Appropriate ................................ 17

              1.     The Proposed Class Satisfies the Requirements of Rule
                     23(a) ..................................................................................... 18

                     a.     The Class Meets the Numerosity Requirement ......... 18

b.     Common Questions of Law and Fact Exist ................................ 18

c.     Plaintiffs' Claims and Defenses Are Typical of Those of the Class ........................................................................ 19

d.     The Named Plaintiffs Will Fairly and Adequately Protect the Interests of All Class Members................................ 20

2.     The Proposed Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2) ................................................................... 21

a.     Individual Actions Would Establish Incompatible Standards of Conduct or Would Be Dispositive of the Interests of Absent Members ................................................ 21

b.     Defendants Have Acted or Refused to Act on Grounds Generally Applicable to the Class and Relief for the Class as a Whole Is Appropriate.......................... 22

3.     Rule 23(g) Is Satisfied .......................................................... 23

D.     The Proposed Notice to the Class Satisfies Rule 23 and Due Process Requirements .......................................................... 23

V.     CONCLUSION........................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)..................................................... 17

*Babcock v. Computer Associates Int'l, Inc.*, 212 F.R.D. 126 (E.D.N.Y. 2005) ......................... 18

*Banyai v. Mazur*, 205 F.R.D. 160 (S.D.N.Y. 2002)........................................................ 19

*Berger v. Xerox Corp.*, 338 F.3d 755 (7th Cir. 2003)..................................................... 23

*Berry v. Sch. Dist. of Benton Harbor*, 184 F.R.D. 93 (W.D. Mich. 1998) ......................... 7, 8, 17

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877 (6th Cir. 1997) .............................................. 18

*Brotherton v. Cleveland*, 141 F. Supp. 2d 894 (S.D. Ohio 2001)................................................ 8

*Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251 (S.D. Iowa 2001)........................... 23

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981) ........................................................... 8

*Glasser v. Cincinnati Milacron, Inc.*, 808 F.2d 285 (3d Cir. 1986) ........................................ 24

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) ....................................... 9, 16

*Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D. Tex. 2000)................................................. 18

*Huddleston v. Herman &McLean*, 640 F.2d 534 (5th Cir. 1981) ............................................. 15

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)........................................................ 18

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ............................ passim

*In re CMS Energy ERISA Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004)................................... 17, 21

*In re Enron Corp. Sec., Derivative and "ERISA" Litig.*, 228 F.R.D. 541 (S.D. Tex. 2005) ........................................................................................................... 17

*In re Ikon Office Solutions, Inc., Sec. Litig.*, 209 F.R.D. 94 (E.D. Pa. 2002) ..................... passim

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001) ..................... passim

*Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007 (E.D. Mich. 2005) ................................ 2, 8

*Little Caesar Enter., Inc. v. Smith*, 172 F.R.D. 236 (E.D. Mich. 1997) ................................... 20

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)......................................................... 17

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ....................................... 24

*Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) ................................................................ passim

*Reed v. Rhodes*, 869 F. Supp. 1274 (N.D. Ohio 1994) ........................................................ 23, 24

*Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir. 1976) ....................................................... 21

*Smith v. Provident Bank*, 170 F.3d 609 (6th Cir. 1999) ............................................................. 22

*Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.*, 140 F.R.D. 474
    (S.D. Ga. 1991) .................................................................................................................... 23

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) .................................................... 18

*Thompson, v. Midwest Found. Indep. Physicians Assoc.*, 124 F.R.D. 154 (S.D.
    Ohio 1988) ............................................................................................................................ 24

*United Bhd. of Carpenters & Joiners of Am., Local 899 v. Phoenix Assocs., Inc.*,
    152 F.R.D. 518 (S.D. W.Va. 1994) ....................................................................................... 20

*Van Horn v. Trickery*, 840 F.2d 604 (8th Cir. 1988) .................................................................... 8

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ................................................................. 24

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) ............................................................. passim

**Statutes**

28 U.S.C. § 1715(d) ....................................................................................................................... 2

29 U.S.C. § 1109(a) ............................................................................................................... 20, 22

29 U.S.C. § 1132(a) ............................................................................................................... 20, 22

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. passim

Fed. R. Civ. P. 23(a) ............................................................................................................ passim

Fed. R. Civ. P. 23(b) ............................................................................................................ passim

Fed. R. Civ. P. 23(e) ................................................................................................................ 7, 23

Fed. R. Civ. P. 23(g) .................................................................................................................... 23

## <u>Other Authorities</u>

Herbert Newberg and Alba Conte, Newberg on Class Actions § 11.51 (3d ed. 1992) ................................................................................................................ 15

Manual for Complex Litig. § 30.42 (3d ed. 1995) ................................................. 8, 9

Manual for Complex Litig. § 30.44 (2d ed. 1985) .................................................... 8

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Whether the Court should preliminarily approve the Stipulation and Agreement of

Settlement.

2.      Whether the Court should certify the Class, and approve the form and method of

Class Notice pursuant to Federal Rule of Civil Procedure 23.

3.      Whether the Court should set a Fairness Hearing, along with deadlines for Lead

Counsel to file and serve their motion for award of attorneys' fees and costs and Case

Contribution Awards for Named Plaintiffs, and for Lead Counsel to file their motion for final

approval of the proposed Stipulation and Agreement of Settlement.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT</u>

Pursuant to Local Rule 7.1(c)(2), Plaintiffs list the following authority as the most appropriate for the relief sought in their motion:

Fed. R. Civ. P. 23(a), (b), and (e);

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003);

*In re Ikon Office Solutions, Inc., Sec. Litig.*, 209 F.R.D. 94, 108-109 (E.D. Pa. 2002);

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001);

*Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004);

*Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005); and

*Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).

## I.   INTRODUCTION

Plaintiffs David Cooper and Mark Ousachi ("Named Plaintiffs"), by and through Lead Counsel, respectfully move the Court for an Order (1) preliminarily approving the Stipulation and Agreement of Settlement ("Stipulation") described herein; (2) preliminarily certifying the proposed Class pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or 23(b)(2); (3) approving the form and method of Class Notice; and (4) setting a date and time for a hearing (the "Fairness Hearing") for consideration of final approval of the Stipulation,[1] of payment of attorneys' fees and costs, and of Case Contribution Awards to the Named Plaintiffs.

The Stipulation, which provides relief in the form of remedial provisions that are designed to enhance each Class Members' ability to save for retirement, is an excellent result for the proposed Class, participants and beneficiaries of the Ford Motor Company Savings and Stock Investment Plan for Salaried Employees ("SSIP" or the "Ford Salaried Plan") and the Ford Motor Company Tax Efficient Savings Plan for Hourly Employees ("TESPHE" or the "Ford Hourly Plan"; collectively, the "Plans") in light changed circumstances during the Class Period with regard to Ford's prospects and likelihood of surviving as a going concern.  The Settlement also resolves the claims against all Defendants in this ERISA Action, and was reached after vigorous motion practice, Plaintiffs' discovery of critical Plan documents produced by Defendants to date, and arm's-length negotiations.  The Stipulation will provide significant benefits to the Class, while removing the risk and delay of further litigation.

---

[1] Capitalized terms not otherwise defined in this memorandum shall have the same meaning ascribed to them in the Stipulation and Agreement of Settlement.

## II.   PROPOSED SCHEDULE

The parties have agreed to the following schedule of events, the dates of which will be determined after the Court enters the Preliminary Approval Order (also referred to in the Stipulation and herein as the "Order for Notice and Hearing") and sets a Fairness Hearing date:

| Event | Time for Compliance |
|---|---|
| Deadline for Mailing of Class Notice and CAFA notice, publication of Publication Notice, and posting the Stipulation and Class Notice on websites listed in the Stipulation | 21 days after entry of Preliminary Approval Order |
| Deadline for filing Plaintiffs' motions for final approval, for attorneys' fees and costs, and for Case Contribution Awards to Named Plaintiffs | 30 days prior to the proposed Fairness Hearing |
| Deadline for Class Members to comment upon or object to the proposed Stipulation | 10 court days prior to the proposed Fairness Hearing |
| Deadline for filing Plaintiffs' reply in support of motions for final approval, for attorneys' fees and costs, and for Case Contribution Awards to Named Plaintiffs | 3 days prior to the proposed Fairness Hearing |
| Proposed Fairness Hearing | No sooner than 111 days after entry of the Preliminary Approval Order[2] |

## III.   DISCUSSION

### A.   Procedural History

On April 7, 2006, several putative class action complaints were filed in this Court against Ford and various other defendants alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA").  The Court consolidated the complaints, appointed Named Plaintiffs as interim lead plaintiffs, and appointed Keller Rohrback L.L.P and Barroway Topaz Kessler Meltzer & Check, L.L.P. (formerly known as "Schiffrin & Barroway L.L.P."), as Interim

---

[2] Pursuant to the U.S. Class Action Fairness Act of 2005, at 28 U.S.C. § 1715(d), the date of the Fairness Hearing must be at least 90 days after notices are served on the appropriate state and federal officials.

Co-Lead Counsel ("Lead Counsel") to manage the prosecution of the ERISA Action on behalf of the putative class.

Named Plaintiffs subsequently filed a Consolidated Complaint on April 30, 2007 on behalf of all persons, other than the named Defendants, who were participants in or beneficiaries of the Plans.  Named Plaintiffs alleged claims under Sections ERISA §§ 502(a)(2) and 502(a)(3), for breaches of the fiduciary duties of prudence and loyalty, failure to provide complete and accurate information, failure to monitor and co-fiduciary liability.  Defendants moved to dismiss the Consolidated Complaint on June 29, 2007.  The Court denied the motion it its entirety on December 22, 2008.  (*See* Dkt. No. 102).

Following this decision, the parties engaged in extensive discovery and motion practice.  Lead Counsel served Defendants and various third parties with discovery requests, and Lead Counsel reviewed thousands of documents that were provided in response to these requests.  In order to narrow and clarify the contours of discovery, the parties filed several discovery motions, including a motion for protective order that the Court granted in favor of Plaintiffs on September 10, 2009.  (*See* Dkt. No. 135).  Additionally, three motions regarding the scope of discovery had also been fully briefed and the Court set a hearing to resolve all three of these motions on September 2, 2010.  The filings of these discovery motions were the result of hard-fought negotiations and numerous meet-and-confer sessions.

Defendants also filed a Motion for Summary Judgment on December 23, 2009.  Plaintiffs argued that this motion was premature, and Defendants agreed to withdraw the motion and file an omnibus Motion for Summary Judgment.  Defendants filed this motion on May 11, 2010, and although no opposition had been filed at the time the parties negotiated the Stipulation, Lead Counsel were working diligently to prepare a response.  For instance, Lead Counsel had retained

and worked closely with several ERISA and industry experts in preparing for their summary judgment response.  In sum, Lead Counsel undertook extensive discovery and engaged in repeated motion practice over the course of approximately four years before the parties reached an agreement.

**B.      Settlement Negotiations**

The parties engaged in formal settlement negotiations directly with each other while discovery and motion practice was ongoing.  Settlement negotiations escalated throughout the spring and summer of this year, and a tentative understanding on the core elements of the substantive relief that would be included in the settlement agreement was reached on June 7, 2010.  In the weeks following this agreement, the parties engaged in continued hard-fought negotiations regarding the specific terms of the settlement.  The Stipulation reflects the terms of the agreement and was executed by the parties on August 27, 2010.  The Stipulation was the result of lengthy and contentious arm's-length negotiations between the parties.  This process was in all respects thorough, adversarial, and professional.

**C.      Terms of the Stipulation**

The following summarizes the principal terms of the Stipulation[3]:

1.      <u>Settling Defendants</u>.  The Settling Defendants are all Defendants named in this action, each of whom is alleged to have served as a fiduciary for the Plans.

2.      <u>Class</u>.  The Class contemplates that the Court will certify the following non-opt-out class under Fed. R. Civ. P. 23(b)(2):

> (a) All current and former participants and beneficiaries of the Plans whose individual Plan account(s) included investments in Ford stock at any time between April 15, 2000 and August 27, 2010 and; (b) as to each Person within the scope of subsection (a) of this paragraph, his, her or its beneficiaries, alternate payees (including spouses of deceased

---

[3] The terms and conditions are set forth in the Stipulation, attached hereto as Exhibit 1.

Persons who were participants of the Plans), Representatives and Successors-In-Interest, provided, however, that the Class shall not include any Defendant or any of their Immediate Family, beneficiaries, alternate payees (including spouses of deceased Persons who were Plan participants), Representatives or Successors-In-Interest, except for spouses and Immediate Family members who themselves are or were participants in the Plans, who shall be considered members of the Class with respect to their own Plan accounts.

3.      <u>Non-Monetary Equitable Relief</u>.  The non-monetary equitable relief provided by

the Stipulation consists of the following:

(a)      **Online financial advice tools or materials.**  Ford will identify the provider and parameters of the online financial advice tools or materials no later than December 31, 2010, and implement the online financial advice tools or materials as soon as practicable after such identification.  Subject to Ford's ability to contract with the provider of the online financial advice tools or materials, which Ford will make a good faith effort to effectuate, the online financial advice tools or materials may include: (a) online investment advice; (b) an annual retirement evaluation; (c) company stock allocation analysis; (d) savings rate analysis; (e) specific investment advice based on the Class Member's risk profile; (f) retirement adequacy analysis based on the Class Member's individual factors, including the Class Member's age, savings, assets and other income information that the Class Member can input into the online financial advice tool.  Ford shall provide the online financial advice tools or materials (or their equivalent) to the Class Members for a four-year period beginning on the date the online financial advice tools or materials are implemented, and thereafter at the sole discretion of Ford.

(b)      **Fiduciary Training.**  Fiduciary training for Ford's Investment Process Committee and Investment Process Oversight Committee conducted by a qualified third party selected by Ford at least once during each of the four calendar years following Final Approval of the Settlement.

(c)      **Communication Enhancements.**  Participant communication enhancements will be implemented whereby Active Participants are provided with information about the importance of diversification, and the ability to rebalance plan account portfolios in order to minimize the risk of large losses, including, but not limited to general diversification materials.

(d)      **Notice.**  A notice will be provided ninety days after the Effective Date of the Settlement, alerting Active Participants whose Plan investment in Ford stock at that time exceeds 20% of their total Plan holdings that (a) spreading assets among different types of investments can help achieve a favorable rate of return, while minimizing the overall risk of losing money; (b) the Department of Labor suggests that an investment of more than 20% in any single company may result in a non-diversified portfolio; and (c) the Active Participant should consider taking additional steps to diversify the portfolio

including: (i) diversifying the account across several investment options of different investment styles, (ii) ensuring that funds in Active Participants' accounts do not have a significant portion of the funds' holdings in company stock, (iii) reviewing the account at least once a year to ensure that allocation to company stock does not exceed the Active Participant's goals and (iv) if allocation to company stock does exceed the Active Participant's goals, considering investing contributions in a different investment option or selling company shares and reinvesting the proceeds within the retirement account.  This notice shall be written in plain English, and communicate the substance of this provision in a manner designed to be easily understood by Plan participants.

(e)     **Special Provisions Relating to SSIP.**  If Ford elects in its discretion, during the three-year period following Final Approval of the Settlement, to provide an employee match under the SSIP, any such match shall (a) be provided in cash; and (b) be invested in any applicable investment option under the SSIP designated by the Active Participant, or if no investment option has been designated, then the match will be invested under the applicable default investment option, currently a target date retirement fund based on the Active Participant's age.

(f)     **Availability of Information to Evercore Trust Co.**  Ford will make available to Evercore Trust Company, N.A., upon reasonable request all available current and historical information regarding the Company and the Plans reasonably requested by Evercore Trust Company, N.A. in order for Evercore Trust Company to perform its duties under the contract entered into by Ford, the Investment Process Committee of Ford Motor Company, and Evercore Trust Company, N.A.

4.     Released Claims.  Sections 1.35 and 2 generally define the Released Claims as claims brought by Named Plaintiffs in the instant ERISA Action, or claims that could have been asserted by Named Plaintiffs based upon the allegations in the instant ERISA Action.  The Stipulation and dismissal of the ERISA Action shall not release, bar or waive any ERISA § 502(a)(1)(B) claim for vested benefits by any Plan participant or beneficiary where such claims are unrelated to any matter asserted in this litigation.

5.     Notice.  A proposed Preliminary Approval Order is attached as Exhibit A to the Stipulation.  The Preliminary Approval Order provides for the following notices:  (a) a mailed notice (Exhibit 1 to the Preliminary Approval Order ), to be mailed to the last known address of

all Parties and Class members; and (b) a published summary notice (Exhibit 2 to the Preliminary

Approval Order), to be published in the *USA Today* and the *Detroit Free Press*.

6.     <u>Administration</u>.  Ford shall be responsible for ensuring Class Notice and

Publication Notice in accordance with the Court's Order approving this motion.  Ford shall also

bear all reasonable out-of-pocket costs and expenses incurred in providing Notice and

Publication Notice, including costs associated with identifying and notifying the Class Members,

effecting mailing of the Class Notice and publication of the Publication Notice as ordered by the

Court, and the administration of the Stipulation, including without limitation, the actual costs of

printing and mailing the Class Notice and publication of the Publication Notice.

## IV.   DISCUSSION

### A.     The Stipulation Meets the Judicial Standards for Preliminary Approval Under Rule 23

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, court approval is required to

settle a certified class action: "The claims, issues, or defenses of a certified class may be settled,

voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).

Furthermore, "[t]here are three steps which must be taken by the court in order to approve a

settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the

class must be given notice of the proposed settlement, and (3) after holding a hearing, the court

must give its final approval of the settlement."  *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp.

2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).

"[T]he court first must determine whether the proposed settlement is potentially

approvable."  *Berry v. Sch. Dist. of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998).  A

district court "bases its preliminary approval of a proposed settlement upon its familiarity with

the issues and evidence of the case as well as the arms-length nature of the negotiations prior to

7

the settlement." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1026. "If the proposed

settlement appears to be the product of serious, informed, non-collusive negotiations, has no

obvious deficiencies, does not improperly grant preferential treatment to class representatives or

segments of the class, and falls within the range of possible approval, then the Court should

direct that notice be given to the class members of a formal fairness hearing, at which evidence

may be presented in support of and in opposition to the settlement." *Id.* at 1015 (citing Manual

for Complex Litig. § 30.44 (2d ed. 1985)).

**B.      Consideration of Final Approval Criteria Supports Preliminary Approval**

As a preliminarily matter, in evaluating a proposed class settlement, the court does "not

decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*,

450 U.S. 79, 88 n.14 (1981); *see also Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 904 (S.D.

Ohio 2001) (citing *Vukovich*, 720 F.2d at 921). The object of settlement is to avoid, not

confront, the determination of contested issues, and the approval process should not be converted

into an abbreviated trial on the merits. *See Van Horn v. Trickery*, 840 F.2d 604, 607 (8th Cir.

1988) ("the court need not undertake the type of detailed investigation that trying the case would

involve"). In addition, "[b]eing a preferred means of dispute resolution, there is a strong

presumption by courts in favor of settlement." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp.

2d at 1008-09 (citing Manual for Complex Litig. § 30.42 (3d ed. 1995)). This is particularly true

in the case of class actions. *See Berry*, 184 F.R.D. at 97 ("It is beyond question that the law

generally favors the settlement of class actions.")

The Court's inquiry on approval is thus limited to the consideration of whether the

proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the

public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005)

(citing *Vukovich*, 720 F.2d 909, 921-23 (6th Cir. 1983)).  This determination requires consideration of "whether the interest of the class as a whole are better served if the litigation is resolved by settlement rather than pursued."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citing Manual for Complex Litig. § 30.42 at 238 (3d ed. 1995)).

Courts in the Sixth Circuit have found the following factors are relevant in determining whether the settlement is fair, adequate, reasonable, and consistent with the public interest:

(1)     the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement;

(2)     the risks, expense, and delay of further litigation;

(3)     the judgment of experienced counsel who have competently evaluated the strength of their proofs;

(4)     the amount of discovery completed and the character of the evidence uncovered;

(5)     whether the settlement is fair to the unnamed class members;

(6)     objections raised by class members;

(7)     whether the settlement is the product of arm's-length negotiations as opposed to collusive bargaining; and

(8)     whether the settlement is consistent with the public interest.

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 522 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) and *Vukovich*, 720 F.2d at 922-23).  As explained in further detail below, consideration of these criteria support the conclusion that the proposed Stipulation is well within the range of possible final approval.

**1.     The Likelihood of Plaintiffs' Success on the Merits Weighed Against the Form of the Relief Offered in the Stipulation Favors Approval**

As evidenced by the vigor with which they have prosecuted the ERISA Action, and the substantial amount of time and money they have expended to that end, Lead Counsel believe

9

strongly in their claims and the legal basis for them.  Plaintiffs believe that the evidence gathered

thus far supports Defendants' fiduciary status under both of the Plans and their failure – as

fiduciaries – to protect the Plans and serve participants' best interests.  The Court's denial of

Defendants' motions to dismiss was an important milestone in proving Defendants' violations

under ERISA.  Lead Counsel are nevertheless mindful that the Court's decisions thus far have

largely been based on the allegations in the Complaint rather than a review of the evidence that

Plaintiffs ultimately expect to present in this case.  At trial, the parties' disparate views on the

facts, along with extensive expert testimony would be put to the Court for resolution.  Plaintiffs

believe  that the law of ERISA supports them, but, of course, are not certain how the case would

be decided by the Court once all the evidence is presented.

    Moreover, Plaintiffs recognize that ERISA is a complex and rapidly developing area of

law, and that trials on these issues have been few and far between.  New precedent is issued

almost weekly, and the demands on counsel and the Court are complex and require the

dedication of significant resources.  If this Stipulation is not approved, a substantial amount of

work will need to be completed in the ERISA Action, including resolution of the pending

motions before the court, completion of fact discovery and expert discovery, motion practice for

class certification, designation of witnesses and exhibits, preparation of pre-trial memoranda and

proposed findings of fact and conclusions of law, presentation of witnesses and evidence at trial,

and, depending on the trial court's ruling on the merits, briefing of the losing party's almost-

certain appeal.  Plaintiffs believe that their claims would be successful, but nonetheless are aware

of the risks associated with proceeding to trial.

    Furthermore, as the result of improved market conditions, Ford's fortunes have in large

part turned around.  This presents an opportunity for Defendants to argue that Plaintiffs' claims

may be substantially reduced or eliminated in their entirety, even if Plaintiffs' claims are legally

sound.  When weighed against this fact, the non-monetary equitable relief that the proposed

Stipulation provides to the Class reveals the Stipulation's fairness, adequacy, and reasonableness.

For example, in the *Ikon ERISA Litigation*, the court approved a settlement of similar ERISA

claims in which the relief consisted primarily of removing the plan's restriction on re-allocation

of match contributions, and did not include any direct monetary payment to the class.  *In re Ikon*

*Office Solutions, Inc., Sec. Litig.*, 209 F.R.D. 94, 108-109 (E.D. Pa. 2002) ("*IKON*").  The *IKON*

court specifically recognized that "[t]he threat of a legal bar to any recovery of monetary relief is

obviously a legitimate consideration of counsel when assessing the appropriateness of a non-cash

settlement."  *Id.* at 108.

It should further be stressed that the non-monetary relief provided by Defendants

provides substantial benefits to the Plans' participants.  All Class Members will have access to

online financial advice and tools (or their equivalent), and Ford's Investment Process Committee

and Investment Process Oversight Committee must undergo periodic training by a third-party

provider for the benefit of Plan participants.  Information about Plan investments will also be

much more accessible and transparent.  Thus, given the present situation and Defendants'

potential arguments that no monetary relief would be available to the class, the non-monetary

relief provided by Defendants supports preliminary approval of the settlement.  Indeed, with the

steps Defendants will be required to take to enhance the Plans, participants and beneficiaries will

ultimately see their investments increase.

    **2.**    **The Risks, Expenses and Delay of Continued Litigation Favor Approval**

"Settlements should represent a 'compromise which has been reached after the risks,

expense and delay of further litigation have been assessed.'"  *In re Cardizem CD Antitrust Litig.*,

218 F.R.D. at 523) (quoting *Vukovich*, 720 F.2d at 922).  "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 523.  This is particularly true in the case of class actions, which are "inherently complex."  *Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1013.  "[S]ettlement avoids the costs, delays, and multitude of other problems associated with them."  *Id.*

In the ERISA Action, the Class faces two primary sources of risk in establishing their claims on the merits: the risk of establishing liability, and the risk of proving damages.  As discussed above, Lead Counsel believe that ERISA required the Defendants to prudently and loyally manage the Plans' investment in Ford stock, which they failed to do.  Nonetheless, Plaintiffs recognize the possibility that the outcome will not be as expected, particularly in a complex class action litigation such as this.  With respect to damages, Plaintiffs expect that Defendants will vigorously challenge Plaintiffs' loss estimates if the case were to proceed against them on the merits.  Plaintiffs recognize the risks associated with being unable to prove damages, particularly in light of the substantial increase in the price of Ford stock since falling below $2 share in late 2008.

In addition, presenting an ERISA case of this type on the merits is a massive undertaking, with substantial risks, expense, and delay.  This case was filed over four years ago, and Named Plaintiffs have not yet moved for Class Certification despite their best efforts to do so.  Defendants have forcefully defended their actions with respect to the Plans to date, and there is no reason to believe they would not continue to do so through trial and on appeal if necessary.  In short, a favorable decision on the merits is not so much a foregone conclusion as to remove the impetus for settlement while the proposed Stipulation ensures remedial provisions for the benefit

of Class Members.  These remedial provisions are far better for the Plans' participants than the possibility of a small recovery if any, after an expensive and protracted trial and appeal.

> **3.    The Judgment of Experienced Trial Counsel and the Amount and Character of Discovery Weigh In Favor Of Approval**

The Sixth Circuit has observed that "the court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.  Significantly, however, the deference afforded counsel should correspond to the amount of the discovery completed and the character of the evidence uncovered."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 523 (quoting *Vukovich*, 720 F.2d at 922-23 (internal citations omitted)).

Lead Counsel have extensive experience in handling class action ERISA cases and other complex litigation and each firm has recovered billions of dollars for those they have represented.  Keller Rohrback L.L.P. ("Keller Rohrback") is a national leader in this area of ERISA litigation.  It has served or is serving as lead or co-lead counsel for plaintiffs in numerous ERISA class action cases, including: *In re Enron ERISA Litigation*, No. 01-3913 (S.D. Tex.), *In re WorldCom, Inc. ERISA Litigation*, No. 02-4816 (S.D.N.Y.), *In re Global Crossing ERISA Litigation*, No. 02-7453 (S.D.N.Y), *In re AIG ERISA Litig.,* No. 04-9387 (S.D.N.Y.)[4]; *In re Washington Mutual, Inc., et al. ERISA Litig.*, No. 07-1874 (W.D. Wash.); *In re Merrill Lynch & Co., Inc. Sec., Derivative & ERISA Litig.,* No. 07-9633 (S.D.N.Y.); *Alvidres v. Countrywide Fin. Corp.,* No. 07-05810 (C.D. Cal.); *In re Lucent Technologies, Inc. ERISA Litigation*, No. 01-3491 (D.N.J.); *In re Providian Financial Corp. ERISA Litigation*, No. 01-5027 (N.D. Cal.); *In re Xerox ERISA Litigation*, No. 02-1138 (D. Conn.); *In re Dynegy, Inc. ERISA Litigation*, No. 02-3076 (S.D. Tex.); *In re Williams Cos. ERISA Litigation*, No. 02-153 (N.D. Okla.); *In re Household International, Inc. ERISA Litigation*, No. 02-7921 (N.D. Ill.); *In re Syncor ERISA*

---

[4] Keller Rohrback served on a Provisional Committee with other firms.

13

*Litigation*, No. 03-2446 (C.D. Cal.); *In re HealthSouth ERISA Litigation*, No. 03-1700 (N.D. Ala.); *In re Goodyear Tire & Rubber Company ERISA Litigation*, No. 03-02182 (N.D. Ohio); and *In re Merck ERISA Litigation*, No. 05-01151 (D.N.J.).  Keller Rohrback has also served as lead or co-counsel in the following cases that were litigated in the Eastern District of Michigan: *In re CMS Energy ERISA Litigation*, No. 02-72834 (E.D. Mich.) (J. Steeh), *In re Visteon ERISA Litigation*, No. 05-71205 (E.D. Mich.) (J. Cohn), and *In re Delphi Corporation Securities, Derivative, and "ERISA" Litigation*, MDL No. 1725 (E.D. Mich.) (J. Rosen)

Barroway Topaz Kessler Meltzer & Check, L.L.P. ("BTKMC") has also successfully brought ERISA class action cases on behalf of defined contribution plans and their participants and beneficiaries.  The firm has been appointed lead counsel in numerous ERISA breach of fiduciary class actions, including: *In re Lear ERISA Litigation*, No. 06-11735 (E. D. Mich.); *In re Raytheon ERISA Litigation*, No. 03-10940 (D. Mass.); *Gee v. UnumProvident Corp.*, No. 03-1552 (E.D. Tenn.); *In re Westar Energy Inc. ERISA Litigation*, No. 03-4032 (D. Kan.); *Koch v. Loral Space & Communications Ltd.*, No. 03-9729 (S.D.N.Y.); *In re Honeywell ERISA Litigation*, No. 03-1214 (D.N.J.); *Wilson v. Federal Home Loan Mortgage Corp.*, MDL Docket No. 1584, 04- 2632 (S.D.N.Y.); *In re Schering-Plough Corp. ERISA Litigation,* No. 03-1204 (D.N.J.)*; In re Calpine Corp. ERISA Litigation*, No. 03-1685 (N.D. Cal.)*; In re Citigroup ERISA Litigation,* No. 03-2932 (S.D.N.Y.).

Likewise, Liaison Counsel, Stephen Wasinger has extensive experience in ERISA matters.  Mr. Wasinger was formerly a senior partner at the law firm of Honigman Miller Schwartz and Cohn, where he concentrated on complex civil litigation, including federal securities and ERISA litigation.  A significant and precedential decision handled by Mr.

Wasinger was *Huddleston v. Herman &McLean*, 640 F.2d 534 (5th Cir. 1981), which remains a leading case on causation and reliance under the federal securities law.

Furthermore, Lead Counsel have been able to develop the issues in this case to an appropriate point for settlement.  They have conducted an extensive investigation and discovery, engaged in repeated motion practice, including briefing on the motion to dismiss, and participated in numerous meet and confers and other negotiations concerning the issues in this litigation.  While there is much to be done to prepare the case for trial, Plaintiffs possess a full and comprehensive understanding of both the strengths and the weaknesses of their claims, and believe without hesitation that the Stipulation is fair, reasonable and is in the best interests of the Plans and the Class.  This opinion should weigh heavily in favor of both preliminary and final approval of the Stipulation.

## 4.     Evaluation of Objections by Unnamed Class Members is Premature

As is normally the case, this factor cannot be evaluated on preliminary approval before notice is issued.  Instead, Lead Counsel will address any objections at the final approval hearing.

## 5.     The Stipulation is the Product of Arm's-Length Negotiations

In the absence of evidence to the contrary, a court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion.  *In re Telectronics Pacing Sys., Inc*., 137 F. Supp. 2d at 1018 (citing Herbert Newberg and Alba Conte, Newberg on Class Actions § 11.51 (3d ed. 1992) ("[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.")).  In this case, there is ample evidence to support this presumption.

15

As mentioned previously, Lead Counsel have extensive experience in handling class action ERISA cases and other complex litigation, having successfully prosecuted and defended dozens of class actions in state and federal courts throughout the nation.  Notably, these class actions include many of the most precedential cases in the rapidly developing area of ERISA law.  Lead Counsel are therefore in a strong position to fully evaluate the strengths and weaknesses of their case.

The proposed Stipulation in this case comes after approximately four years of hard-fought litigation.  The parties began settlement negotiations armed with substantial information, including experience from similar cases, the results of independent investigation and discovery, and the Court's rulings on Defendants' Motion to Dismiss and Plaintiffs' Motion for Protective Order.  That information enabled the parties to accurately assess the relative strengths and weaknesses of their positions as well as the range of potential damage awards.  Counsel for the parties met and conferred throughout the spring and summer of 2010 and fully considered the arguments presented by both sides.  These negotiations were well-informed, involved and at arm's-length.  The parties' arm's-length negotiation process therefore fully supports preliminary approval of the Stipulation.

### 6.    The Stipulation's Consistency with Public Interest Favors Approval

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *In re Cardizem CD Antitrust Litig*, 218 F.R.D. at 530 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).  ERISA class actions are no exception.  Many courts have noted the particular complexity of ERISA class actions. *See*, *e.g.*, *In re Enron Corp. Sec., Derivative and "ERISA" Litig.*, 228 F.R.D. 541, 565 (S.D. Tex.

2005) (finding that the "complexity, expense and likely duration of the litigation . . . are self evident and exceptional . . . ."); *IKON*, 209 F.R.D. at 104-07 (finding that the complexity and duration of litigation of similar breach of fiduciary duty claims, as well as the expense of litigation and risks of establishing liability and damages, weighed heavily in favor of settlement). Settlements are particularly desirable in cases such as this one, where remedial measures must be implemented over extended periods of time. *See Berry*, 184 F.R.D. at 97.  Here, there are no contravening public interest justifications sufficient to support deviating from the public interest served by settlement of this complex ERISA class action, which provides remedial provisions for the benefit of the Class.  This factor weighs strongly in favor of approval as well.

**C.     Certification of the Class is also Appropriate**

Class certification is governed by Fed. R. Civ. P. 23, regardless of whether certification is sought pursuant to a contested motion or, as here, pursuant to a settlement.  *See Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 619-29 (1997).  Thus the Court may certify the proposed class at this time upon finding that the action satisfies the four prerequisites of Fed. R. Civ. P. 23(a) and one or more of the three subdivisions of Fed. R. Civ. P. 23(b).  *Id.*

Courts in this jurisdiction have consistently found that class certification is appropriate in ERISA company stock cases involving nearly identical claims as those at issue here.  *See Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) ("*Kmart Class Cert.*"); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 543 (E.D. Mich. 2004); *see also* Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment) (certification under Fed. R. Civ. P. 23(b)(1) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries).  Congress has similarly embraced the use of representative actions to enforce ERISA.  *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) (noting Congress' clearly expressed intent that ERISA

"actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole"). Thus this ERISA Action, which seeks relief on behalf of the *Plans* for damages suffered *by the Plans*, is precisely the type of case that Fed. R. Civ. P. 23 was enacted to address.

### 1.    The Proposed Class Satisfies the Requirements of Rule 23(a)

#### a.    The Class Meets the Numerosity Requirement

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is often met with classes of a substantial size. *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997) (joinder would have been impracticable for proposed class of over 1,100 individuals). Numerosity is generally not at issue in ERISA cases. *See Babcock v. Computer Associates Int'l, Inc.*, 212 F.R.D. 126, 130 (E.D.N.Y. 2005). Here, Plaintiffs allege that more than 150,000 members of the Class participated in, or were beneficiaries of, the Plans during the Class Period. *See* Complaint ¶ 288. The Class is thus too large for joinder to be practicable and accordingly, the numerosity requirement is satisfied. *See Kmart Class Cert.*, 220 F.R.D. at 517.

#### b.    Common Questions of Law and Fact Exist

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class." This standard "is not a high burden." *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 569 (S.D. Tex. 2000). "[T]here need be only a single issue common to all members of the class," *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996), and "the resolution of [that common issue] will advance the litigation." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

Plaintiffs have identified a series of common questions of law and fact, including: (a) whether Defendants owed a fiduciary duty to Plaintiffs and members of the Class; (b) whether

Defendants breached their fiduciary duties to Plaintiffs and members of the Class by failing to act prudently and solely in the interests of the Plans' participants and beneficiaries; (c) whether Defendants violated ERISA; and (d) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.  Other common questions include, but are not limited to, what Plan-wide communications Defendants made to Plan participants and beneficiaries; whether those communications contained material misrepresentations or failed to disclose material information; whether certain Defendants failed to properly monitor their appointees; whether individual Defendants knew of alleged improprieties, including serious mismanagement; the means by which any conflicts of interest were handled; what Defendants did to protect the Plans; and issues of co-fiduciary liability.  All of these questions and issues are common to the Class.  *See*, *e.g., Kmart Class Cert*., 220 F.R.D. at 517-18 (identifying similar common issues and concluding as well that the claim for a breach of the duty of prudence "clearly presents a common issue.").  Commonality is thus something of a foregone conclusion in the context of this ERISA Action, as "the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002).

### c.    Plaintiffs' Claims and Defenses Are Typical of Those of the Class

Fed. R. Civ. P. 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class.  "The purpose of the typicality requirement is to assure that the named representatives' interests align with those of the class." *Kmart Class Cert*., 220 F.R.D. at 518.  "The typicality requirement is met if the plaintiff's claim 'arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory.'" *Id*. (quoting *Little Caesar*

*Enter., Inc. v. Smith*, 172 F.R.D. 236, 242-43 (E.D. Mich. 1997)).  Representatives and class members need not, however, have suffered identical injuries or damages.  *See United Bhd. of Carpenters & Joiners of Am., Local 899 v. Phoenix Assocs., Inc.*, 152 F.R.D. 518, 522 (S.D. W.Va. 1994).

Plaintiffs' claims arise from the same course of events as the claims of the Class – Defendants' alleged fiduciary breaches.  Given that "the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants," ERISA company stock cases like this ERISA Action are particularly appropriate for class certification, *Kmart Class Cert.*, 220 F.R.D. at 519 (quoting *IKON*, 191 F.R.D. at 465).  Plaintiffs and each Class member can make the same arguments in support of Defendants' liability, rendering Plaintiffs' claims typical of the Class.

Moreover, ERISA's unique standing and remedial provisions, under which a participant who sues for breach of a fiduciary's duties is entitled to obtain plan-wide relief, further supports a finding of typicality.  *See* ERISA § 409(a), 29 U.S.C. § 1109(a) (liability for breach of fiduciary duty is "to the plan"); ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) (authorizing plan participant to sue for breach of fiduciary duty under ERISA § 409(a)); *Kmart Class Cert.*, 220 F.R.D. at 519 (noting representative nature of action under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)).  With each Class member asserting the same claims arising from the same conduct by Defendants and seeking the same relief on behalf of the Plans, there can be no fair dispute that the claims asserted by Plaintiffs are typical for purposes of Fed. R. Civ. P. 23(a)(3).

> **d.     The Named Plaintiffs Will Fairly and Adequately Protect the Interests of All Class Members**

Fed. R. Civ. P. 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class they seek to represent.  The Sixth Circuit has articulated two criteria for determining adequacy of representation: 1) the representative must have common

interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.  *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976).  Importantly, this District Court has recognized that "[b]ased on the language in *Senter*, the Sixth Circuit appears to focus on the adequacy of plaintiff's counsel and whether plaintiff has a conflicting interest, not the personal qualifications of the named plaintiff."  *Kmart Class Cert.*, 220 F.R.D. at 520.

These requirements are easily met in the case at bar, where Plaintiffs seek to hold all of the Plans' fiduciaries personally liable for any losses incurred.  The Named Plaintiffs' interests are thus the same as those of the absentee class members: all seek to increase the value of the Fund, whether through monetary or non-monetary relief.  There can be no question that the Named Plaintiffs' interests are aligned with those of the Class, and they have retained qualified counsel with extensive experience in representing plaintiffs in class litigation, including ERISA cases.

> **2.      The Proposed Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2)**
>
> > **a.      Individual Actions Would Establish Incompatible Standards of Conduct or Would Be Dispositive of the Interests of Absent Members**

A class may be certified under Fed. R. Civ. P. 23(b)(1) if, in addition to meeting the requirements of Fed. R. Civ. P. 23(a), the prosecution of separate actions by individual class members would create the risk of inconsistent adjudications, which would create incompatible standards of conduct for the defendant, or would as a practical matter be dispositive of the interests of absent members.  Fed R. Civ. P. 23(b)(1)(A)  and (B).  Courts have certified classes under Fed. R. Civ. P. 23(b)(1) in ERISA cases for those very reasons.  *See Kmart Class Cert.*, 220 F.R.D. at 522-23; *In re CMS Energy ERISA Litig.*, 225 F.R.D. at 546; *IKON*, 191 F.R.D. at 466.

Moreover, the Advisory Committee on Rule 23 specifically noted that actions that "charge[] a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of . . . beneficiaries" – *i.e.*, an action like the present action – "should ordinarily be conducted as class actions" under Rule 23(b)(1)(B).  *See* Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment).  As a result, certification of the proposed class under Rule 23(b)(1) is appropriate in this ERISA Action.

> **b.     Defendants Have Acted or Refused to Act on Grounds Generally Applicable to the Class and Relief for the Class as a Whole Is Appropriate**

A class may be certified under Fed. R. Civ. P. 23(b)(2) if, in addition to meeting the requirements of Fed. R. Civ. P. 23(a), "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2). Here, Plaintiffs allege that Defendants breached their fiduciary duties by, among other things, (i) failing to ensure that Ford stock was a prudent investment for the Plans, (ii) failing to monitor the Plans' fiduciaries, and (iii) failing to disclose material information.

The available remedies include restoration of the Plans' losses, as well as such other equitable actions the Court finds appropriate.  ERISA §§ 502(a)(2) & (3), 29 U.S.C. §§ 1132(a)(2) & (3); ERISA § 409(a), 29 U.S.C. § 1109(a).  Indeed, remedies under ERISA § 502(a)(2) are by definition plan-wide, a classic example of equitable relief.  *See, e.g., Smith v. Provident Bank*, 170 F.3d 609, 616 (6th Cir. 1999) ("ERISA authorizes participants to sue on behalf of a plan for breach of fiduciary duty, see 29 U.S.C. § 1132(a)(2) . . . . Permitting such suits by participants is the mechanism which Congress established to enforce the plan's right to recover for a breach of fiduciary duty." (citing 29 U.S.C. §§ 1109(a), 29 U.S.C. § 1132(a);

*Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.*, 140 F.R.D. 474, 479 (S.D. Ga. 1991) (noting that "[t]he right to recovery, after all, belongs to the plan").

Once the Plans recover non-monetary relief available under ERISA, any consequential financial benefit to individual participants and beneficiaries "would flow directly and incidentally" from the Plans' recovery. *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 259 (S.D. Iowa 2001); *see also Berger v. Xerox Corp.*, 338 F.3d 755, 763-4 (7th Cir. 2003) (certifying Fed. R. Civ. P. 23(b)(2) class where ERISA plaintiffs sought declaratory relief). Accordingly, Plaintiffs' claims are also properly certified under Fed. R. Civ. P. 23(b)(2).

### 3.    Rule 23(g) Is Satisfied

Fed. R. Civ. P. 23(g) requires the Court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. As explained previously, the Court is aware of the claims brought in this action, and the extraordinary time and effort already expended by Lead Counsel in connection with this litigation. Moreover, Lead Counsel are among the leading firms in the prosecution of ERISA class actions, and possess unparalleled expertise in the specific types of ERISA claims brought in this lawsuit. Lead Counsel thus satisfy the requirements of Fed. R. Civ. P. 23(g).

### D.    The Proposed Notice to the Class Satisfies Rule 23 and Due Process Requirements

Once a court grants preliminary approval to a proposed settlement, "[n]otice of the proposed settlement and the fairness hearing must be provided to class members." *Reed v. Rhodes*, 869 F. Supp. 1274, 1278 (N.D. Ohio 1994) (citing *Vukovich*, 720 F.2d at 921); *see also* Fed. R. Civ. P. 23(e)(1)(B) and (C). To satisfy due process, notice to the Class must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Substantively, the notice should provide a "very general description[] of the proposed settlement." *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982), *superseded by statute on other grounds as recognized in Glasser v. Cincinnati Milacron, Inc.*, 808 F.2d 285 (3d Cir. 1986). This description should nevertheless be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Reed*, 869 F. Supp. at 1279 (citing *Vukovich*, 720 F.2d at 921). Procedurally, members of the class must receive the "best notice practical under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Vukovich*, 720 F.2d at 921. In this regard, where the names and last known addresses of all class members are available from defendants' business records, mailing the notice of the proposed settlement and fairness hearing to the class members at those addresses is the best notice practicable under the circumstances. *Thompson, v. Midwest Found. Indep. Physicians Assoc.*, 124 F.R.D. 154, 157 (S.D. Ohio 1988) (citing *Mullane*, 339 U.S. at 315). Individual circumstances will dictate the length of time between the notice and the reasonableness hearing, but this length of time should be a minimum of two weeks. *Vukovich*, 720 F.2d at 921.

Here, the proposed form of Class Notice describes in plain English the terms and operation of the Stipulation; the considerations that caused Named Plaintiffs and Lead Counsel to conclude that the Stipulation is fair and adequate; the maximum attorneys' fees and Case Contribution Awards for the Named Plaintiffs that may be sought; the procedure for objecting to the Stipulation; and the date and place of the Fairness Hearing. With the Court's approval, the Class Notice will be mailed to each Class member, no later than 90 days prior to the Fairness

Hearing.  Last known addresses of Class Members are available from the business records of Ford.  In addition, a summary form of notice will be published in the *USA Today* and the *Detroit Free Press*.  These proposed forms of notice will fairly apprise Class Members of the Stipulation and their options with respect thereto, and therefore fully satisfy due process requirements.

## V.   CONCLUSION

For the foregoing reasons, Lead Counsel submit that the Stipulation is an excellent result for the Class in the factual context of this complex and hard-fought ERISA Action.  Thus Lead Counsel respectfully request that the Court grant Plaintiffs' motion and (i) enter the Preliminary Approval Order, which provides for notice to the Class as described herein, and (ii) set a Fairness Hearing, along with deadlines for Plaintiffs to (a) file and serve the motion for award of attorneys' fees and costs and for Case Contribution Awards for the Named Plaintiffs; and (b) file their motion for final approval of the proposed Stipulation and approval of the Plan of Allocation.

DATED this 27th day of August, 2010.             Respectfully submitted,

/s/ Derek W. Loeser
KELLER ROHRBACK L.L.P.
Lynn L. Sarko
Derek W. Loeser
Elizabeth A. Leland
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel: (206) 623-1900
Fax: (206) 623-3384

BARROWAY TOPAZ KESSLER
 MELTZER & CHECK LLP
Joseph H. Meltzer
Edward W. Ciolko
Peter H. LeVan, Jr.
280 King of Prussia Road

Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

**Lead Counsel for the Class**

STEPHEN F. WASINGER, PLC
Stephen F. Wasinger
26862 Woodward Avenue, Suite 100
Royal Oak, MI 48067
Tel: (248) 544-1500
Fax: (248) 544-9400

**Liaison Counsel for the Class**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of August, 2010, I electronically filed the foregoing

PLAINTIFFS' MOTION FOR AN ORDER PRELIMINARILY APPROVING STIPULATION

AND AGREEMENT OF SETTLEMENT, CERTIFYING THE CLASS, AND SETTING A

DATE AND TIME FOR THE FAIRNESS HEARING with the Clerk of the Court using the ECF

System, which will send notification of such filing to all registered counsel.

/s/ Derek W. Loeser
Derek W. Loeser
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel: (206) 623-1900
Fax: (206) 623-3384